Ernest **WILLIAMS**, Petitioner,

v.

LaMoyne **GREEN**, Superintendent, Respondent.

No. C66–93.

United States District Court
N. D. Ohio, W. D.
May 23, 1966.

Ernest Williams in pro. per.

Leo J. Conway, Asst. Atty. Gen., State of Ohio, Columbus, Ohio, for respondent.

DON J. YOUNG, District Judge.

This is the second application by this petitioner for a writ of habeas corpus from this Court. The first petition was denied July 16, 1965, because of the petitioner's failure to exhaust his state remedies.

It is somewhat difficult to ascertain, from the mass of documents filed with the Court, the exact status of petitioner's case in the state courts. Petitioner is apparently unwilling to accept the fact that a certain amount of delay is inherent in legal proceedings, and seeks to advance his cases by filing petitions for writs of mandamus. As a result it is impossible to tell whether some of the papers he has filed deal with relevant or irrelevant litigation.

For example, a copy of a letter from the Clerk of the Supreme Court of Ohio dated March 22, 1966 refers to a case filed and docketed in the Supreme Court on February 21, 1966, case number 40057, as pending but not yet assigned for hearing. However, a certificate from the Clerk of the Supreme Court, dated May 9, 1966, states that petitioner had filed a petition for a writ of habeas corpus which was dismissed October 13, 1965, and has perfected no appeal from his original conviction nor from an order denying relief under the post-conviction remedies provided by Sections 2953.21 to 2953.24, Ohio Revised Code. What case number 40057 in the Supreme Court is, and what has been done about it, does not appear with clarity either from petitioner's pleadings or from the respondent's.

■ Obviously, if there is an action still pending in the Supreme Court of Ohio, involving the merits of petitioner's contentions, this action is prematurely brought, and must be dismissed.

■ Confused as the record is on the present status of petitioner's attempts to exhaust the remedies available to him under state law, it is entirely clear that one form of relief which is available under the law of Ohio has not yet even been attempted by the petitioner. That is the remedy of delayed appeal from the origi-

nal conviction. Until relief has been denied by the Supreme Court of Ohio under that form of procedure, the processes of this Court will not be available to him.

For all of the foregoing reasons, this Court has no choice except to dismiss the petition, and an order will be drawn accordingly.

It is difficult not to be somewhat critical of the procedures in the State courts as they are disclosed by the record. The present state post-conviction remedies provided by the statutes referred to above provide for the appointment of counsel to represent the petitioner. When one of the original bases of a petitioner's complaint is failure to assign counsel, it is difficult to understand why the state courts persist in a stubborn refusal to acknowledge that the services of counsel in an overwhelming majority of cases will lead to a simplification of the proceedings.

It is highly probable that in the present case, at least, both this court and the state courts will have to devote considerably more time and attention to the petitioner's pleadings for relief, before it can ultimately be said that all his rights have been properly adjudicated. It is at least equally probable that had counsel been appointed for the petitioner when he first commenced his state post-conviction procedures, or if even now the state courts would grant him the aid of counsel, much court time and effort could be saved.

This Court is convinced of the capability and integrity of the bar of the State of Ohio, and of the eagerness of its members to respond to their traditional duty, as officers of the court, to see that no person's liberties are unprotected. Counsel have never failed to accept appointment, without fee, whenever the cause of justice required it. Both the petitioner and the courts might well be benefited by taking advantage of this loyalty of the bar to our ideal of liberty under law.

If it be considered by the judiciary of the state that it is impertinent for this Court to criticize their actions, this Court can only respond that it would rather be criticized by its brethren for impertinence than reversed by its superiors for not doing that which law and justice sometimes require.